IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBERT EARL ALEXANDER,

<table>
<tr><td></td><td>Plaintiff,</td><td></td><td>OPINION and ORDER</td></tr>
<tr><td>v.</td><td></td><td></td><td></td></tr>
<tr><td>SARA ENGLISH,</td><td></td><td></td><td>22-cv-178-jdp</td></tr>
<tr><td></td><td>Defendant.</td><td></td><td></td></tr>
</table>

---

Plaintiff Robert Alexander, proceeding without counsel, alleges that his work on this case has been impeded by persistent racial harassment by prison staff. Dkt. 59. I held an evidentiary hearing to evaluate Alexander's allegations. I told the parties if the allegations of racial harassment were proven, I would enter an appropriate order to protect Alexander, but that if the allegations were false, I would sanction him. Dkt. 60.

After considering the hearing testimony and the other evidence submitted by the parties, I am dismissing this case as a sanction against Alexander for falsely alleging racial harassment to avoid deadlines and delay this case.

FACTS

I find the following facts to be established by the evidence submitted before and during the hearing.

On February 9, 2024, defendant filed a motion for partial summary judgment for failure to exhaust administrative remedies. Alexander did not respond by the March 4 deadline. Instead, on March 13, Alexander filed a motion for an extension of time, in which he alleged that he had been unable to litigate this case because he had been suffering from physical and

mental health problems due to ongoing racial harassment by prison staff. Dkt. 59. Alexander stated under penalty of perjury that two staff members at the prison, Sergeant Lyle Rickert and Officer Curtis Visser, had used racial slurs against him, and that another inmate, James Bell, had also used racial slurs against him "at the behest of inf[irmary] security staff." *Id.* I granted Alexander an extension of time to file his response brief. Dkt. 60. I also scheduled an evidentiary hearing to get to the bottom of his allegations of racial harassment. *Id.*

In response, defendant filed declarations from Rickert and Visser flatly denying that they used racial slurs against Alexander or that they directed others to do so. Dkt. 72 and Dkt. 73. Defendant also produced complaint forms that Alexander had submitted about racial harassment by Rickert and Visser. The first complaint form says that on November 27, 2023, Alexander complained that Visser had called him a "good boy" after Alexander took his medication during morning med pass. The complaint examiner reviewed video of Alexander's cell, which showed that Visser wasn't in the cell during morning med pass. The examiner also spoke with nurse Mary Breitkreutz, who administered Alexander's medication that morning, and she confirmed that Visser wasn't present. The second complaint form says that on December 28, 2023, Alexander complained that Rickert had called him the n-word for the second time in 30 days.[1] The complaint examiner spoke with Rickert, who denied these allegations. The examiner also reviewed video of Alexander's cell during the time period that Alexander alleged Rickert had used the slur and found no evidence that Rickert had said anything while in Alexander's cell.

---

[1] The court uses the euphemism "n-word" in this opinion; the participants did not.

Regarding Alexander's allegations that inmate Bell called him racial slurs, Visser stated in his declaration that on February 11, 2024, Visser was sitting at the officer's desk approximately 20 feet from the dayroom when he heard Bell say, "Get away from me . . . Visser, tell him to get away from me" (alteration in original). Dkt. 73, ¶ 14. Visser went into the dayroom. Alexander has difficulties hearing and speaking, so he uses a dry erase board to communicate. When Visser entered the room, Alexander wrote on the dry erase board that Bell had called him the n-word. Visser told Bell not to communicate with Alexander anymore. In addition to the February 11 incident, Rickert stated in his declaration that Alexander had recently accused Bell and another inmate, Simplot, of using racial slurs. Rickert interviewed those inmates, who denied using racial slurs.

Alexander did not file a witness or exhibit list for the evidentiary hearing. Approximately two weeks before the hearing, he filed 58 documents, but none of them concerned his allegations of racial harassment. Dkt. 78 and Dkt. 79.

At the hearing, defendant called Rickert and Visser. They denied calling Alexander any racial slurs and provided the same testimony about Alexander's interactions with Bell that they had provided in their declarations.

Alexander told the court that he had submitted a motion the Friday before the hearing, asking for additional time to locate three witnesses who could corroborate Alexander's version of events. The court did not receive Alexander's motion until the day after the hearing, Dkt. 83, but I asked Alexander at the hearing to describe the contents of his motion. He identified the witnesses as two nurses and a doctor who had worked at the infirmary and said that they could testify about the "six and half years of torment" he had endured from Rickert, Visser, and Visser's son, another correctional officer. But when I asked Alexander when these witnesses

had told Alexander they would testify, Alexander said that the two nurses told him they would testify more than a year ago, and that the doctor had not told him she would testify at all. The incidents of racial harassment at issue occurred less than a year ago, so these individuals would not have been able to tell him more than a year ago that they would testify about these events. I denied Alexander's motion.

Alexander also said that he had submitted to the court a letter from inmate Bell in which Bell admitted to calling him the n-word. The court received that letter the day after the hearing. Dkt. 84. The letter is not signed, and it reads as follows: "I apologize for arguing with you—and anything I said that offended you. I don't want problems and you're right I don't know you and I shouldn't judge you. I was wrong for that." *Id.*

Alexander has communication difficulties that make it difficult for him to testify in-person, so I gave him the choice to testify at the hearing or to submit a declaration after the hearing providing his version of events. Alexander chose to provide a declaration, which the court received on May 20. Dkt. 92. In the declaration, Alexander states that Rickert called him the n-word on two occasions, that Visser called him a boy twice, including during the incident at med pass documented in his inmate complaint, and that Bell called him the n-word on February 11. Alexander also made new allegations that Rickert had falsely accused Alexander of inappropriate sexual behavior, and that other prison staff had used derogatory language against him in 2021, 2022, and 2023. Alexander submitted a number of documents along with his declaration. Most of these documents were unrelated to his allegations of racial harassment by Visser and Rickert, but Alexander did attach copies of the same complaint forms that defendant had provided earlier. Alexander also provided one page of a complaint form about the incident involving Bell. Dkt. 92, at 59. That page indicated that Alexander had complained

that Bell had called him a racial slur and that Visser had failed to investigate. *Id.* The complaint examiner had recommended that Alexander's complaint be dismissed because "the institution has sufficiently addressed this matter." *Id.*

ANALYSIS

"A district court has inherent power to sanction a party who 'has willfully abused the judicial process or otherwise conducted litigation in bad faith.'" *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015) (quoting *Salmeron v. Enterprise Recovery Systems, Inc.*, 579 F.3d 787, 793 (7th Cir. 2009). In imposing a sanction, I must find by a preponderance of the evidence that the offending party committed misconduct. *See Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 778–81 (7th Cir. 2016), *cert. denied*, 583 U.S. 822 (2017). Sanctions against a plaintiff may include dismissal of the plaintiff's case. Dismissal is an appropriate sanction if I find that "the plaintiff has abused the judicial process by seeking relief based on information that the plaintiff knows is false." *Id.* at 776 (internal quotations omitted).

After reviewing the evidence and taking testimony at the hearing, I find that Alexander knowingly made false statements to the court on at least two occasions: first when he moved for an extension of time to respond to defendants' motion for partial summary judgment, and second when he moved for an extension of time to call witnesses for the hearing on his allegations of racial harassment.

As for his motion for an extension of time to file his response brief, Alexander alleged that he had been unable to litigate this case due to "ongoing and constant" harassment from prison officials. Specifically, Alexander stated that he had been the target of racial slurs from Rickert, Visser, and from inmate Bell, whom he alleged had harassed him at the behest of

prison officials. Alexander elaborated on these allegations in his declaration, saying that Rickert had called him the n-word on two occasions, that Visser had called him "boy" twice, including during the incident at med pass, and that Bell had called him the n-word on February 11.

I do not find Alexander's allegations of racial harassment credible, for two reasons. First, his account that Visser called him "boy" at med pass was discredited by prison officials, who reviewed video showing that Visser was not in Alexander's cell during med pass on the date in question. Defendant did not submit the underlying video, but Alexander provided no explanation of why his account of the facts is inconsistent with the investigation that the prison conducted. In fact, Alexander stated in his declaration that the incident happened on the date and time indicated in his prison complaint, which is the same date and time that the prison's investigation found that it could not have occurred because Visser was not in the cell.

Second, there are discrepancies in Alexander's account of the incident involving Bell. His initial allegation was that Bell had called him the n-word at the behest of prison staff, but his declaration says nothing about prison staff playing a role in Bell's harassment. Alexander also stated at the hearing that he had sent a letter to the court from Bell in which Bell admitted to calling him the n-word. But the letter the court received does not say that. Dkt 84. The letter is not signed, but even assuming that Bell wrote it, he doesn't admit to calling Alexander anything; he simply apologizes "for arguing with you and anything I said that offended you." *Id.* Alexander's insistence at the hearing that the letter said something that it did not say undermines the credibility of his account of what occurred regarding Bell.

I do not find credible Alexander's account of the racial harassment he experienced from Rickert, Visser, and Bell. I do find credible Rickert's and Visser's denials that the racial harassment occurred. Both officers' testimony of what occurred on the dates of the alleged

6

harassment was consistent with the accounts that they provided in their declarations and with contemporaneous prison records. I conclude that Alexander knowingly made false statements when he accused Rickert and Visser of using racial slurs, and when he accused prison officials of encouraging Bell to use racial slurs.

There is another problem with Alexander's allegations of racial harassment. Alexander made these allegations in the context of asking for an extension of time to file his response brief, alleging that he was experiencing "ongoing and constant" harassment that prevented him from litigating this case. But other than the incident involving Bell, which occurred on February 11, 2024, all of the alleged incidents occurred months before Alexander's response to defendant's motion for partial summary judgment was due. Alexander did not directly state in his motion for an extension of time when the alleged harassment occurred, but it was at least misleading for Alexander to assert that this harassment was the reason for his failure to respond to defendant's motion for partial summary judgment.

As for Alexander's motion for an extension of time to call witnesses, Alexander stated in that motion that he had three witnesses, all former prison staff, who were willing to testify to corroborate his allegations. Dkt. 83. But when I asked him at the hearing when these witnesses had agreed to testify, Alexander conceded that two of them told him they would testify more than a year ago, before the racial harassment occurred, and that one of them never told him she would testify at all. So Alexander's original statement that he had three former prison staff witnesses who were willing to testify was false.

There is a common thread here. Alexander's false statements about racial harassment and false statements about witnesses were both made in an attempt to receive an extension of court deadlines. The first time, Alexander wanted an extension to file his response brief to

defendants' motion for partial summary judgment, and the second time, he wanted an extension to provide his witness list for the evidentiary hearing. I conclude that Alexander has conducted this litigation in bad faith by knowingly and repeatedly making false statements in an attempt to obtain extensions of court deadlines.

SANCTIONS

Alexander is an experienced pro se litigant who has filed ten cases in this court and four in the Eastern District of Wisconsin. I have warned him in this case and in prior cases that if he makes false statements to the court, I may issue sanctions, including dismissal of his cases and issuance of a filing bar. *See, e.g.*, Dkt. 60 and Dkt. 247 in case no. 17-cv-861-jdp. Despite these warnings, Alexander knowingly made false statements on at least two occasions in an attempt to receive extensions to court deadlines. Alexander's false statements unnecessarily prolonged this litigation and required substantial investment of resources from the court, the Department of Justice, and the Department of Corrections to investigate. The appropriate sanction is to dismiss this case with prejudice. *See Hoskins v. Dart*, 633 F.3d 541, 543–44 (7th Cir. 2011) (recognizing dismissal as an appropriate sanction for false statements).

I will be alert to any further false statements in any other cases that Alexander files. If the court again finds that Alexander has made false statements to the court, the court will consider dismissing all of Alexander's pending cases and imposing a filing bar that restricts Alexander's ability to file new cases.

ORDER

IT IS ORDERED that:

1.  Plaintiff Robert Alexander's motion for an extension of time, Dkt. 83, is DENIED.

2.  Defendant Sara English's motion for partial summary judgment, Dkt. 54, is DENIED as moot.

3.  This case is DISMISSED with prejudice as a sanction. The clerk of court is directed to enter judgment and close the case.

Entered June 14, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge